[No. 20879.   In Bank.— April 29, 1892.]

THE PEOPLE, RESPONDENT, *v.* LEE YUNE CHONG, APPELLANT.

CRIMINAL LAW — HOMICIDE — VERDICT — DEGREE OF MURDER NOT FIXED — DISCHARGE OF JURY — RECALL TO AMEND VERDICT. — Where the jury have rendered a verdict upon a charge of murder, finding the defendant guilty, without fixing the degree of murder, and fixing the penalty at imprisonment for life, and have been discharged and have dispersed after record of their verdict, the control of the court and jury over the verdict is at an end; and a subsequent order of the court, directing them to be recalled, and setting aside previous orders discharging them and directing the verdict to be recorded, and a subsequent instruction to them to amend their verdict by fixing the degree of the crime, and a subsequent verdict rendered accordingly fixing the degree of the crime as murder in the first degree, are nullities.

ID. — VERDICT MUST FIX DEGREE. — In a prosecution for murder, the verdict of guilty must designate the degree of the crime, and if the jury find

the defendant guilty and fail to find the degree of the crime, the judgment will be reversed upon appeal, and a new trial granted.

ID. — DISCHARGE OF DEFENDANT. — The error in failing to find the degree of the crime, in a verdict of guilty, upon the charge of murder, is not an error entitling the defendant to a discharge, any more than any other reversible error committed during the trial, and a motion of the defendant to be discharged from custody because of such error is properly denied by the trial court.

ID. — APPEAL — POWER TO GRANT NEW TRIAL AGAINST OBJECTION OF APPELLANT. — Under section 1260 of the Penal Code, providing that the appellate court may reverse, affirm, or modify a judgment appealed from, and may, if proper, order a new trial, a new trial may be ordered in a criminal case if the judgment is reversed, even though the defendant did not move for a new trial, and denies the power of the appellate court to grant it, and asks that he be discharged.

ID. — JEOPARDY. — The question of jeopardy can only arise after an issue has been made by a plea of once in jeopardy, and it cannot be urged upon appeal from a judgment where the verdict has not fixed the degree of the crime.

APPEAL from a judgment of the Superior Court of Sonoma County, from an order refusing to enter a judgment of acquittal, and from an order refusing to direct that the defendant be discharged.

The facts are stated in the opinion of the court.

*A. B. Ware,* and *J. T. Campbell,* for the Appellant.

The recording of a verdict is essential to its validity, because it is not perfected until recorded. (Pen. Code, sec. 689; 4 Am. & Eng. Ency. of Law, 881.) The jury having rendered one verdict, and having been discharged and dismissed, its verdict could not thereafter be altered or amended. (*Rigg* v. *Cook,* 4 Gilm. 336; 46 Am. Dec. 463, 473; *Walters* v. *Junkins,* 16 Serg. & R. 414; 16 Am. Dec. 585; *Sargent* v. *State,* 11 Ohio, 472; *Blum* v. *Pate,* 20 Cal. 72; *Paige* v. *O'Neal,* 12 Cal. 494; Pen. Code, secs. 689, 1140.) The jury had no control over the case after its discharge. (*Rigg* v. *Cook,* 4 Gilm. 336; 46 Am. Dec. 473; *Sargent* v. *State,* 11 Ohio, 472; *Blum* v. *Pate,* 20 Cal. 72.) The unwarrantable discharge of the jury after evidence closed in a capital case is equivalent to an acquittal. (*Ned* v. *State,* 7 Port. 187; *State* v. *Garrigues,* 1 Hayw. 276; *Commonwealth* v. *Clue,* 3 Rawle, 498; *Wein-*

*zorflin* v. *State,* 7 Blackf. 186.)    The words, in the verdict, "fix the penalty at imprisonment for life" must be treated as surplusage and meaningless, because the jury could only put them in the verdict in case they had found the defendant guilty of murder in the first degree, which they failed to do.   (Pen. Code, sec. 1097; *People* v. *Gilmore,* 4 Cal. 376; 60 Am. Dec. 620; *People* v. *Apgar,* 35 Cal. 389; *People* v. *O'Neil,* 78 Cal. 388.)    No one can be placed twice in jeopardy for the same offense.    (U. S. Const., art. V.; Cal. Const., art. I., sec. 13.)    When a party is once placed upon his trial for a public offense, on a valid indictment, before a competent court, with a competent jury, duly impaneled, sworn, and charged with the case, he has then reached and is placed in the jeopardy, from a repetition of which, upon the same indictment, or any other indictment for the same offense, he is forever protected, and after the jeopardy has once so attached, a discharge of the jury, without the consent of the defendant, for any cause within the control of the court, before they have rendered a verdict, is equivalent to a verdict of acquittal.    (*People* v. *Webb,* 38 Cal. 477, 488; 1 Bishop's Crim. Law, sec. 665; *People* v. *Cage,* 48 Cal. 325; 17 Am. Rep. 436; *People* v. *Hunckeler,* 48 Cal. 333; Cooley's Constitutional Limitations, 4th ed., 403; *McFadden* v. *Commonwealth,* 23 Pa. St. 12; 62 Am. Dec. 308; *State* v. *McKee,* 1 Bail. 651; 21 Am. Dec. 499, note 505.)    One trial and verdict protects a defendant, whether verdict be for or against him, and whether the courts are satisfied with the verdict or not.   (Cooley's Constitutional Limitations, 4th ed., 403.)    Discharge of the jury in a criminal case, without legal justification for the act, entitles the prisoner to a discharge.   (*Mahala* v. *State,* 10 Yerg. 532; 31 Am. Dec. 591; *Commonwealth* v. *Cook,* 6 Serg. & R. 577; 9 Am. Dec. 481, 482; 1 Wharton's Crim. Law, 6th ed., sec. 575; *United States* v. *Gilbert,* 2 Sum. 37; *People* v. *Horn;* 70 Cal. 17; *Dyer* v. *Commonwealth,* 23 Pick. 404; *People* v. *Liscomb,* 60 N. Y. 559; 19 Am. Rep. 211; *Cook* v. *State,* 60 Ala. 39; 31 Am. Rep. 31.)    The defendant is clearly entitled to be discharged.

(*Hilands* v. *Commonwealth*, 111 Pa. St. 1; 56 Am. Rep. 235; *Cook* v. *State*, 60 Ala. 39; 31 Am. Rep. 31.)

*Attorney-General Hart, Deputy Attorney-General Layson,* and *J. A. Barham,* for Respondent.

The object of section 1257 of the Penal Code, requiring the jury to fix the degree, is to enable the court to fix the penalty. The maxim of the law is, that when the reason of a rule ceases, so should the rule itself. (Civ. Code, sec. 3510.) As section 190 of the Penal Code provides that the jury might fix the penalty if the verdict was conviction of murder in the first degree, and the court so instructed them, a verdict of guilty and fixing the penalty as imprisonment for life, rendered it surplusage to find the degree. (*Herman* v. *People,* 131 Ill. 594.) The information charged murder in the first degree, and the general verdict of guilty imports a conviction as charged. (Pen. Code, sec. 1151; *People* v. *March,* 6 Cal. 543; *People* v. *West,* 73 Cal. 346.) The defendant certainly suffered no injury. (Pen. Code, sec. 1404.) The law never requires an idle act. (Civ. Code, sec. 3532.) It will not be presumed that the jury violated the instruction of the court and section 190. They are told if they find defendant guilty of murder in the first degree, "the statute permits the jury to award the penalty." Under this instruction the jury could award the penalty only in case of finding defendant guilty of murder in the first degree. (*People* v. *Whitely,* 64 Cal. 211; *People* v. *Perez,* 87 Cal. 123; *People* v. *Gilbert,* 57 Cal. 97; *People* v. *Price,* 67 Cal. 351; *People* v. *Manners,* 70 Cal. 428; *People* v. *West,* 73 Cal. 345; *State* v. *Sweeney,* 93 Mo. 38.) The court had the right to reassemble the jury and amend the verdict; and unless there is injury affecting his substantial rights, the defendant cannot complain. (*Boyett* v. *State,* 26 Tex. App. 689; *Mitchell* v. *State,* 22 Ga. 211; 68 Am. Dec. 493; *Brister* v. *State,* 26 Ala. 108, 132; *People* v. *Jenkins,* 56 Cal. 7; *People* v. *Murback,* 64 Cal. 371; *Territory* v. *Nichols,* 1 West Coast Rep. 669; *State* v. *Lee,* 80 Iowa, 75; 20 Am.

St. Rep. 401; *Wood* v. *McGuire,* 17 Ga. 361; 63 Am. Dec. 247; *Nichols* v. *Nichols,* 136 Mass. 256; *People* v. *Brotherton,* 47 Cal. 388; *People* v. *Colby,* 54 Cal. 37; *People* v. *Swenson,* 49 Cal. 388; *Herman* v. *People,* 131 Ill. 594.)   Prejudicial error must be affirmatively shown.   This has not been done. (Pen. Code, sec. 1404.)   The question of "once in jeopardy" is no longer an open question in this state. If judgment is reversed on appellant's application, he must stand trial. (*People* v. *Olwell,* 28 Cal. 456; *People* v. *Barric,* 49 Cal. 345; *People* v. *Travers,* 77 Cal. 176; *People* v. *Travers,* 73 Cal. 580; *People* v. *O'Neil,* 78 Cal. 388.)

McFARLAND, J. — The appellant was accused of the crime of murder, and the jury returned the following verdict: "We, the jury, find the defendant guilty, and fix the penalty at imprisonment for life." This verdict was declared and duly recorded, and the jurors were discharged for the term, and left the court-room.   Most of them went downstairs to the clerk's office to get warrants for their pay as jurors.   Three or four of them went, by mistake, to the sheriff's office, on a still lower floor, where there was a conversation with a third party, who spoke approvingly of the verdict.   In the clerk's office there was a controversy with the clerk about one day's pay, which occupied considerable time.   A number of spectators mingled with the jurors as they went away from the court-room, and the jurors considered themselves finally discharged and free to talk about the case. Several of them did have conversations with different persons, who approved the verdict, and among others, with one of the attorneys for the prosecution.

After the jury has thus been discharged, the presiding judge, after having disposed of some other business, left the bench and went towards, or into, his chambers. He then returned, and ordered the jury called back into the jury-box, and told the clerk to make the following order: "That the order discharging the jury in the case of *People* v. *Lee Yune Chong* be set aside and vacated, and also the order directing the verdict to be re-

corded be also set aside and vacated, and call the jury."
The appellant was in court, and also his counsel, who
had been notified to appear; and the latter objected
and excepted to the order, saying that they were there
only to protest against the action of the court in calling
the jury back. The persons who had been jurors in
the case were again brought together in the court-room,
and the court instructed them that their verdict was
informal, and that they must amend it by finding the
degree of the crime, etc. They then retired, and re-
turned the following paper: "We, the jury, find the
defendant guilty of murder in the first degree, and fix
the penalty imprisonment for life." Appellant's coun-
sel objected to all these proceedings, and excepted to
the overruling of their objections, and moved for the
discharge of the appellant, and excepted to the denial
of said motion. The exact time which elapsed from
the discharge of the jury until their return does not
appear, one of the witnesses putting it from five to ten
minutes; but it is clear that during that time they were
beyond the control of the court, had thrown off their
characters as jurors, and had mingled with their fellow-
citizens, free from any official obligation.

On the day appointed for rendering judgment, appel-
lant's counsel "moved the court to order judgment of
acquittal, and that he be discharged from custody, and
that the information herein be not further prosecuted,
for the following reasons," — being, substantially, that
the jury had been discharged without his consent, and
without rendering a legal verdict against him, etc.
The motion was denied, and appellant excepted. Judg-
ment was then entered sentencing appellant to im-
prisonment for life. The judgment recited both the
verdicts. The appellant appeals from the judgment,
and also from the orders of the court refusing to enter
judgment of acquittal, and to direct that appellant be
discharged.

It is quite clear that all the proceedings by which
the court reassembled the persons who had constituted

the jury, and instructed them to find another verdict, and the so-called second verdict itself, were nullities. "With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed"; and "after the verdict is received and the jury discharged, . . . . the control of the jury and of the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court." (*Blum* v. *Pate*, 20 Cal. 72; *Sargent* v. *State*, 11 Ohio, 472; *Rigg* v. *Cook*, 4 Gilm. 336; 46 Am. Dec. 473.) The case of *People* v. *Jenkins*, 56 Cal. 7, cited by respondent, is not in point. In that case, the court, noticing that the form of the verdict was irregular before the verdict was finally accepted or the jury discharged, directed the jury to retire and reconsider their verdict. That course was entirely proper; and this court, on the appeal, after alluding to the duty of the trial court to see to the form of the verdict, say: "For that purpose, the court can, at any time while the jury are before it, and *under its control*, see that it is amended in form so as to meet the requirements of the law." The language hereinbefore quoted, to the effect that the functions of a jury cease with their assent to the recorded verdict, must be construed, of course, as applying to a final assent followed by a discharge. A court would, no doubt, have the power to direct a jury to correct an informal verdict, although the mistake had not been discovered until after the verdict had been entered upon the minutes, "while the jury are before it and under its control." There might be peculiar circumstances under which questions difficult of solution would arise; but the facts in the case at bar are so broad and well defined as to bring it clearly within the general rule above stated.

The case stands, therefore, as though there had been no attempt to revive the defunct jury, or to change the

real verdict. The order that "the order directing the verdict to be recorded be also set aside and vacated" does not in terms vacate the verdict itself, but if it could be construed as in terms vacating the verdict, it would be unauthorized and void.

The judgment must be reversed, however, because the verdict failed to find the degree of the crime. It has always been the statutory law that in a murder case the verdict of guilty must designate the degree of the crime of which the defendant is found guilty; and for many years the Penal Code has provided generally that "whenever a crime is distinguished into degres, the jury, if they convict the defendant, must find the degree of the crime." (Pen. Code, sec. 1157.) And it has been held here, in a number of cases, that when the degree is not found by the verdict (when the crime has degrees), the judgment will be reversed, and a new trial granted. (*People* v. *Marquis*, 15 Cal. 38; *People* v. *Campbell*, 40 Cal. 129; *People* v. *Jefferson*, 52 Cal. 452; *People* v. *Travers*, 73 Cal. 580; *People* v. *O'Neil*, 78 Cal. 388.)

Appellant's motion to be discharged was properly denied. While the failure of the jury to find the degree of the crime is an error for which the judgment must be reversed, it no more entitles appellant to a discharge than would any other reversible error committed during the progress of the trial.

Appellant asks that the judgment be reversed and that he be discharged; and contends that as he did not move for a new trial, no new trial can be ordered. It will be observed that in the cases last above cited — where there was a failure to find the degree of the crime — new trials were ordered, though in most of them a new trial had not been asked by the appellant. Under section 1260 of the Penal Code, the appellate court may reverse, affirm, or modify a judgment appealed from, "and may, if proper, order a new trial." It was expressly held in *People* v. *Olwoll*, 28 Cal. 456, approved in *People* v. *Barric*, 49 Cal. 342, and *People* v. *Travers*, 77 Cal. 176, that — we quote from *People* v. *Travers* — "if

a defendant in a criminal case is convicted and appeals, and the judgment is reversed, the appellate court may order a new trial, even though the defendant does not move for such new trial, and denies the power of the court to grant it." And the case at bar is clearly one in which it is proper that a new trial should be ordered.

Counsel for appellant argue the question of " once in jeopardy," but that question can arise only after an issue has been made by a plea of " once in jeopardy." It is not necessary, therefore, to discuss that question here, although it may not be out of place to say that the cases last above cited of *People* v. *Olwell*, 28 Cal. 456, *People* v. *Barric*, 49 Cal. 342, and *People* v. *Travers*, 77 Cal. 176, are strong authorities against the position taken by appellant on that question.

As to other points made, we see no error in giving or refusing instructions to the jury. There are a number of skeleton allusions in the brief to alleged errors in rulings upon the admissibility of evidence, but as they are not argued or stated, we have not followed up the references to the transcript to see what they are.

The judgment is reversed, and a new trial is ordered. The orders appealed from are affirmed.

DE HAVEN, J., SHARPSTEIN, J., PATERSON, J., HARRISON, J., GAROUTTE, J., and BEATTY, C. J., concurred.